UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARIE P.,[1]

Plaintiff

-vs-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

DECISION and ORDER

1:24-CV-00751-CJS

---

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied Plaintiff's application for Social Security Disability Insurance ("DIB") benefits and Supplemental Security Income ("SSI") benefits. Plaintiff maintains that such determination must be reversed since the Commissioner's decision contains errors of law and is unsupported by substantial evidence, as more specifically set forth below. Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF No. 15) and Defendant's cross-motion for the same relief (ECF No. 21). For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded to the Commissioner of Social Security for further administrative proceedings.

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error

---

App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [(“]ALJ[)”]. Failure to apply the correct legal standards is grounds for reversal.”) (citation omitted).

If the Commissioner applied the correct legal standards, the court next “examines the record to determine if the Commissioner's conclusions are supported by substantial evidence.” *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) (“The findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive.”). Substantial evidence is defined as “more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the ‘clearly erroneous’ standard, and the Commissioner’s findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise.” *Brault v. Social Sec. Admin., Comm’r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). “An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered.” *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) (“While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the

Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*.[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also*, *Loni S. v. Comm'r of Soc. Sec*., No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's

consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.’).”).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly, on November 3, 2021, Plaintiff filed applications for Social Security Disability Insurance Benefits (“DIB”) and Supplemental Security Income Benefits (“SSI”), claiming to be disabled due to a combination of impairments including lumbar degenerative disc disease, non-union and neuroma of the left foot, and bilateral carpal tunnel syndrome.

On July 1, 2022, the Commissioner had Plaintiff undergo a consultative internal medicine examination by John Schwab, D.O. ("Schwab”). Tr. 1446-1449. Schwab reported that Plaintiff’s chief complaints were low back pain, related to a fall in 1989; bunions and Morton’s neuroma in the left foot; bilateral carpal tunnel syndrome; and rheumatoid arthritis. Tr. 1446. Plaintiff reportedly told Schwab that her low back pain was “constant” “with maximum intensity of 10/10” that “radiate[d] to her left lower extremity with some numbness in that leg." Tr. 1446. Plaintiff also told Schwab that her rheumatoid arthritis bothered her most in her wrists and ankles, for which her rheumatologist had prescribed her hydroxychloroquine. Tr. 1446. Plaintiff indicated that she used a cane to ambulate at times, though she did not have a cane or other assistive device at the examination. Schwab noted that Plaintiff had never had back surgery, but that she had had several other surgeries, including right knee “scope” and repair; left foot bunionectomy with fusion of several toes; Morton’s neuroma surgery on foot; and right foot bunionectomy. Tr. 1446. Schwab performed a physical examination and reported the

following abnormal findings: Unable to walk on heels and toes; able to squat to 60%; less-than-full movement in the lumbar spine; and reduced dorsiflexion in the left ankle. Tr. 1447-1448. Schwab's diagnosis was: "1. Low back pain. 2. History of rheumatoid arthritis. 3. Carpal tunnel syndrome bilateral." Tr. 1448-1449. Schwab's Medical Source Statement was as follows: "Marked restriction prolonged walking, climbing stairs, ladders, and standing. There is a mild restriction to bending, lifting, and carrying heavy objects." Tr. 1449.

The Commissioner denied Plaintiff's claim initially and upon reconsideration. In connection with the reconsideration decision, the Commissioner relied on a medical opinion from agency review physician D. Brauer, M.D. ("Brauer"). Tr. 112-120. Brauer's written statement contains a summary of the entire medical record, including Schwab's consultative report. At the conclusion of such summary, Brauer states: "Based on available mer [("medical evidence of record")], clmt appears appropriate for a Light RFC with restrictions indicated above," Tr. 116, referring to his opinion that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and have postural limitations consisting of occasional climbing of ramps/ stairs/ ladders/ ropes/ scaffolds, and occasional stooping, kneeling, crouching, and crawling. Tr. 113-114. Brauer's report acknowledges that his opinion is less restrictive than Schwab's, and, when asked to explain why, states, "[Schwab's] opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Tr. 117.

After Plaintiff's application for reconsideration was denied, she requested a hearing before an ALJ. Shortly before the hearing, on March 28, 2023, Plaintiff was seen by her treating orthopedic physician, Christopher Shanahan, PC-A ("Shanahan"), who summarized Plaintiff's condition as follows:

> This is a 53-year-old . . . female presenting for evaluation of the lumbar spine with pain radiating to the left lower extremity. She is known to our office previously for lumbar spine issues. She has not been seen [in this office] for her spine recently[. She] has been focused on previous foot issues. However, she has been having continual pain over the last several years since she was last seen [in this office] in 2018]. She denies any recent injuries or falls causing injury to the spine. She states she is having low back pain radiating to the left lower extremity all the way to the foot. She denies any right-lower extremity symptoms. She describes the pain as a burning, pins-and-needles, throbbing sensation through the leg as well as sharp dull and stiff sensation in the back. Overall she rates her pain is a 9 out of 10 in severity. She has undergone consistent chiropractic care for the spine. She has not had any recent physical therapy or epidural injections.

Tr. 1582. Shanahan performed a physical examination and reported largely normal findings, such as a smooth and reciprocal walking gait; normal lordosis of the spine; no tenderness of paraspinal muscles; full range of motion in the spine; full motor strength; and negative straight leg test bilaterally. Tr. 1583. However, an x-ray taken that day of Plaintiff's lumbar spine showed "dextroconvex scoliosis with loss of lordosis" and "degenerative disc disease L3-4 through L5-S1 with facet arthropathy."[6] Tr. 1586. Shanahan's impressions were "low back pain, unspecified," "other intervertebral disc

---

[6] The Cleveland Clinic website indicates that facet arthropathy "is arthritis in the small joints of your spine. It can lead to back or neck pain, stiffness and limited movement. As cartilage breaks down, bones may rub together, causing pain and inflammation. Treatments like physical therapy and steroid injections can help manage symptoms." https://my.clevelandclinic.org/health/diseases/facet-arthropathy

degeneration, lumbar region," "pain in left leg," and "other secondary scoliosis, lumbar region." Tr. 1583.

Shanahan ordered an MRI study of the lumbar spine, performed on April 6, 2023, which, similar to a prior MRI, showed mild-to-severe degenerative changes. Tr. 1610; *see also*, Tr. 20 (ALJ refers to "moderate to marked findings on imaging"). In particular, radiologist James Rinaldi, M.D. ("Rinaldi"), noted the following:

> Mild S-shaped thoracolumbar scoliosis, lower thoracic and lumbar spondylosis, multilevel disc degeneration, disc space narrowing, disc osteophyte complex, posterior facet arthrosis, congenitally narrow central canal 2. At L2/3, minor straightening thecal sac, mild to moderate right, mild left foraminal stenosis 3. At L3/4, mild central canal, moderate bilateral foraminal stenosis 4. At L4/5, mild central canal, severe left, moderate right foraminal stenosis accentuated by left foraminal disc herniation/ protrusion 5. At L5/S1, moderately severe bilateral foraminal stenosis.

Tr. 1610. After reviewing the MRI results with Plaintiff, Shanahan requested authorization for her to receive "a left-sided L4 and/or L5 transforaminal epidural steroid injection in an attempt to improve her pain." Tr. 1574.

On May 17, 2023, the ALJ conducted the impartial hearing by telephone. During the hearing, Plaintiff testified that she had stopped working as a golf course greenskeeper primarily due to problems with her feet and back, noting that she had had "seven surgeries in nine years" on her feet. Tr. 54. Plaintiff further stated that she suffered a herniated-disc injury to her back when she was approximately 20 years of age, and that, although she had previously been able to continue working despite her back pain, more recently she had been having symptoms of numbness and tingling down her leg for more than two years, which caused her to feel that her leg was going to collapse. Tr. 55. Plaintiff stated

that due to her back pain she was unable to sit for very long, and needed to frequently stand up and change position. Tr. 55. Plaintiff stated that she could sit for up to fifteen minutes, and stand for five minutes or less. Tr. 60. Plaintiff stated that walking was "easier" for her than sitting or standing, but that she was afraid to walk very far, "because it can just come on real quick where I get that [lumbar spine-related] numbness and tingling [in the left leg]," "[t]hat sensation like I'm going to fall." Tr. 60. Plaintiff further testified that she was purposefully pursuing chiropractic care and injections for her back pain rather than surgery, since she was fearful of surgery. Tr. 57. Plaintiff indicated that she got about the same duration of temporary relief –about one week-- from either chiropractic treatments or injections. Tr. 57-58.

On November 1, 2023, the ALJ issued a decision denying Plaintiff's applications, finding that Plaintiff was not disabled at any time between the amended alleged disability onset date, November 3, 2021, and the date of her decision. Plaintiff summarizes the ALJ's analysis using the five-step sequential evaluation in the decision as follows:

> At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since February 24, 2020, the amended alleged onset date." [Tr. 14].
>
> At step two, the ALJ found that Plaintiff had multiple severe impairments, including: "lumbar degenerative disc disease with foraminal stenosis, non-union and neuroma left foot, left carpal tunnel release, and right carpal tunnel syndrome." Tr. 14. The ALJ also found non-severe impairments, including hypercholesterolemia; right bunionectomy; depressive disorder; anxiety disorder; rheumatoid arthritis,[7] and learning disorder. Tr. 14, 16-17. Specifically, regarding the mental health impairments, the ALJ considered

[7] The ALJ referred to evidence indicating that Plaintiff's pain from this alleged condition was actually caused by osteoarthritis.

> the “four broad functional areas […] known as the ‘paragraph B’ criteria.” Tr. 14 Plaintiff was found to have a mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id*.
>
> At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17 Specifically, the ALJ reviewed Plaintiff’s impairments under Listings 1.15, 1.16, 1.18 and 1.22. *Id*.
>
> Before considering step 4, the ALJ found that Plaintiff had the residual functional capacity (“RFC”): “to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant [can lift] (sic) and carry 20 pounds occasionally, and 10 pounds frequently. She can sit, stand, and walk 6 hours total in an 8-hour workday. She can occasionally climb stairs, ramps, ladders, stoop, kneel, crouch, and crawl.” Tr. 18.
>
> At step four, the ALJ found that Plaintiff was unable to perform her past work as a Greenskeeper (DOT 406.683-010, medium, and SVP 3) or a Janitor (DOT 382.664-010, medium, and SVP 3). Tr. 23.
>
> At step five, the ALJ concluded that “there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.” Tr. 24. The ALJ accepted the VE testimony that Plaintiff was capable of making a successful adjustment to other work including representative occupations such as Assembler (DOT 706.684-022, light, and SVP 2); Labeler (DOT 920.687-126, light, and SVP 2); Price-marker (DOT 209.587-034, light, and SVP 2); and Housekeeper (DOT 323.687-014, light, and SVP 2). Id.
>
> The ALJ concluded that Plaintiff had not been under a disability from February 24, 2020 (AOD), through November 1, 2023 (date of decision). Tr. 25.

ECF No. 15-1 at pp. 4-5.

When making her RFC finding, the ALJ first provided a detailed summary of Plaintiff's treatment notes and diagnostic studies, after which she concluded by stating that, "the objective medical evidence does not document symptom severity to the degree alleged by the claimant." Tr. 19-22. Particularly regarding Plaintiff's back pain, the ALJ summarized the medical evidence, including three MRI studies of the lumbar spine over the period 2002-2023, and concluded by stating, "Given the totality of the evidence, while I find lumbar disc disease is a severe impairment, I find this can be accommodated by the reduction to light exertion activity with the postural adjustments as identified in the residual functional capacity assessment." Tr. 20.

The ALJ's opinion does not provide any further explanation on those points, though it offers at least three possible clues for why the ALJ may have concluded that the medical evidence was inconsistent with Plaintiff's statements about her lumbar spine symptoms. First, the ALJ states, that, "Orthopedic assessment of the claimant's back condition is relatively recent, despite the moderate to marked findings on imaging and the claimant's long history of reported back pain." Tr. 20. Second, the ALJ writes, "She reported she had undergone "consistent" chiropractic care, but had not recently had any physical therapy or epidural injections[.]" And, third, the ALJ listed the generally unremarkable findings from Shanahan's physical examination in March 2023. Tr. 20.

The ALJ then discussed the medical opinion evidence, and, in particular, the opinions of Drs. Schwab and Brauer, stating:

> In the prior administrative redetermination dated July 26, 2022, Dr. D. Brauer opined that the claimant could do a full range of light work with postural limitations (Exhibits 7A, 8A). The undersigned find this opinion persuasive.

While this doctor is not an examining or treating source, his findings regarding the exertional and postural limitations are consistent with the objective medical evidence of record; and although he did not account for the claimant's carpal tunnel syndrome by providing manipulative limitations, the objective treatment notes [which Brauer had] showed that the claimant has had much improvement with her injections each time. Thus, I incorporated these findings into the RFC by limiting the claimant to light work with the above postural limitations.

In the July 1, 2022, consultative internist evaluation, Dr. John Schwab noted that the claimant appeared to be in no acute distress, and her gait was normal. She did not use a cane or any other assistive device, and her stance was normal. According to Dr. Schwab, the claimant's cervical spine showed full flexion/extension, full lateral flexion right and left; and full rotary movements right and left. Her lumbar spine showed flexion /extension to 40 degrees each; but she had full lateral flexion and rotary movements bilaterally with no spinal or paraspinal tenderness or SI joint or sciatic notch tenderness or spasm, scoliosis, or kyphosis. More importantly, she had full range of motion in her upper and lower extremities bilaterally with the exception of her ankles bilaterally. The claimant had 5/5 strength in her upper and lower extremities bilaterally, with no distal muscles with no muscle atrophy, or sensory abnormality. His reflexes and physiologic were equal with no joint effusion, inflammation, or instability. The doctor opined that the claimant has marked restriction for prolonged walking, climbing stairs, ladders, and standing, but only mild limitations for bending, lifting, and carrying heaving objects (Exhibit 23F). I find that this opinion is partially persuasive. Although Dr. Schwab is an impartial consultative examiner, who had the opportunity to examine claimant, his findings of marked limitations for standing, and climbing is inconsistent with his own examination of the claimant which showed a normal gait. Furthermore, she had full range of motion, of her hips, and knees bilaterally, and the bulk of her treatment records showed normal gait, 5/5 muscle strength in her lower extremities, and full range of motion of her lower extremities. Thus, his opinion is not fully supported by, or consistent with, his own examination of the claimant as well as the rest of the clinical findings and objective testing contained in the record. On the other hand, I find the portion of his opinion the showed mild limitation for bending, lifting, and carrying heaving objects persuasive. I note that his opinion was factored into the claimant's residual functional capacity.

Tr. 22-23 (emphasis added).

Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, thereby making that decision the Commissioner's final decision.

On August 12, 2024, Plaintiff commenced this action, claiming that the ALJ's decision contains errors of law and is unsupported by substantial evidence, and, more specifically, that the ALJ did not properly assess her RFC, since the ALJ overlooked evidence and erred in his evaluation of the medical opinions by Drs. Schwab and Brauer. *See*, ECF No. 15-1 at p. 18 ("Despite finding Plaintiff's low back impairment and left foot impairment were severe, the ALJ assessed Plaintiff with the ability to stand and walk for 6 hours total in an 8-hour workday."). Plaintiff further contends that this error was harmful, since if the ALJ had found that she was limited to sedentary work, rather than light work, she would have been found disabled by application of the grids.

More specifically, Plaintiff maintains, first, that the ALJ erred by relying on the opinion of non-examining agency review physician Dr. Brauer, rather than the opinion of consultative examiner Dr. Schwab. Plaintiff further asserts that the ALJ failed to follow the applicable regulation for evaluating those opinions, 20 C.F.R. § 404.1520c, since he merely stated that Brauer's opinion was consistent with the medical evidence, without providing any additional explanation regarding the supportability and consistency of Brauer's opinion.

Plaintiff alleges that the ALJ's reliance on Brauer's opinion was also erroneous, since that opinion, issued on July 26, 20222, was, by the time of the hearing, "stale" in light

of subsequent events, namely, Plaintiff's left carpal tunnel surgery in January 2023, and the MRI of his lumbar spine in April 2023. Plaintiff argues that this stale opinion cannot constitute substantial evidence to support the RFC finding.

Plaintiff further contends that the ALJ's evaluation of Schwab's opinion was erroneous inasmuch as it asserted that Schwab's opinion was unsupported by and inconsistent with his own examination and with the other medical evidence, without acknowledging other evidence that supported Schwab's opinion.

Plaintiff also maintains that the ALJ failed to reference her hearing testimony concerning her physical limitations, and unfairly seems to have faulted her for failing to obtain more consistent treatment for her back pain, despite Plaintiff's consistent pursuit of chiropractic treatment throughout the relevant period. See, ECF No. 15-1 ("[T]he ALJ failed to reference Plaintiff's 45 chiropractic appointments with Dr. Bukaty.").

Finally, Plaintiff asserts that the ALJ erred by failing to include manipulative limitations in the RFC finding, despite indicating that her carpal tunnel condition was a severe impairment.

The Commissioner disagrees, maintaining that Plaintiff's arguments are meritless and that Plaintiff is really just asking the Court to reweigh the evidence, and that the Court should therefore affirm the ALJ's determination. More specifically, the Commissioner contends that the ALJ properly evaluated the opinions of Drs. Schwab and Brauer and rightly concluded that Schwab's opinion was not supported by his own examination findings. The Commissioner claims that the ALJ properly gave more weight to Brauer's opinion, since, for example, it "contains a detailed analysis of the record with citations to

diagnostic findings and physical examinations in the record." ECF No. 21 at p. 7. The Commissioner also asserts that Brauer's opinion was not stale, and that it properly accounted for Plaintiff's carpal tunnel condition.

On April 3, 2026, this action was transferred to the undersigned. ECF No. 25. The Court has carefully considered the parties' submissions, including Plaintiff's reply brief, and the relevant sections of the record.

DISCUSSION

Plaintiff primarily contends that the ALJ committed errors when evaluating the medical opinion evidence. The basic legal principles governing an ALJ's duty to evaluate the persuasiveness of medical opinions are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2)[;20 C.F.R. § 404.1520c(b)(2)].[8]
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) )[;20 C.F.R. § 404.1520c(c)(1)]. The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20

[8] *See, Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *1 (2d Cir. May 15, 2024). ("The ALJ was only required to consider the submitted medical opinions based on the five factors set forth in the regulations and to explain how the two "most important" factors – supportability and consistency – applied to each opinion. See 20 C.F.R. § 404.1520c(b)(2) ("[ALJs] may, but are not required to, explain how [they] considered the [other] factors[.]").

> C.F.R. 416.920c(c)(2)[;20 C.F.R. § 404.1520c(c)(2)].
>
> ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2 (N.D.N.Y. Sept. 20, 2022).

Here, the Court agrees with Plaintiff that the ALJ failed to properly explain how she considered the supportability and consistency factors when evaluating Brauer's opinion. In this regard, the ALJ offered only the following explanation for why she adopted Brauer's RFC opinion:

> The undersigned find this opinion persuasive. While this doctor is not an examining or treating source, his findings regarding the exertional and postural limitations are consistent with the objective medical evidence of record[.]

Tr. 22. The Court finds that this explanation is insufficient, since it fails to discuss supportability and only conclusorily addresses consistency. *See, Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) ("Here, the ALJ committed procedural error by failing to explain how [he] considered the supportability and consistency of medical opinions in the record. Although Dr. L. Hoffman's opinion was the only one that the ALJ found persuasive, *the ALJ did not address the opinion's*

*supportability or explain how the opinion was consistent with the record, except to conclude that it was*. *See* Admin. R. on Appeal at 24 (“I find this determination somewhat persuasive as it is generally consistent with the evidence of record.”).”) (emphasis added).

Despite the ALJ's procedural error, the Court could nevertheless affirm if a “a searching review of the record” indicated that the substance of the regulation was not traversed. However, on the present record the Court cannot say that the ALJ's procedural error was harmless. As Plaintiff claims, and the Commissioner does not dispute, Plaintiff would necessarily be found disabled under the grids if she were limited to sedentary work. The ALJ, though, found that Plaintiff was capable of light work, purportedly since she is able to sit, stand, and walk 6 hours total in an 8-hour workday, based primarily on Brauer’s opinion.

However, the ALJ essentially adopted Brauer’s opinion verbatim without any real explanation, even though Brauer’s report itself really doesn’t explain his conclusion. Rather, Brauer’s analysis consists merely of a summary of the medical evidence, followed by the statement, “Based on available mer (“medical evidence of record”), clmt appears appropriate for a Light RFC with restrictions indicated above.” Tr. 116. Although Brauer summarizes the medical records, he does not explain what information therein led him to conclude that Plaintiff could sit, walk, and stand for six hours per workday on a continuing basis, notwithstanding her problems with her feet and back and her associated pain.

Nor is it clear from Brauer’s statement why he concluded that Schwab’s opinion, that Plaintiff would have marked restriction with prolonged walking and standing, was based primarily on Plaintiff’s subjective complaints, rather than on other information that

Schwab had concerning Plaintiff's condition. For example, Schwab referenced Plaintiff's 2014 bunionectomy, her 2018 bunionectomy with fusion in several toes of the left foot, her 2020 Morton's neuroma surgery, and her 2021 bunionectomy, along with her inability to walk heel to toe, her inability to squat fully, and her lack of full dorsiflexion in the left foot. Tr. 1446-1448. Brauer does not explain how Schwab's opinion was inconsistent with such information. Moreover, to the extent that Schwab also relied on Plaintiff's subjective statements about her back pain, Brauer does not explain why that would have been improper, or would have detracted from the opinion, given the diagnostic imaging confirming Plaintiff's degenerative disc disease in the lumbar spine and her consistent pursuit of chiropractic treatment.

Further, to the extent Brauer found that Schwab's opinion was inconsistent with the normal findings from Schwab's office examination, he does not explain why such findings would necessarily be inconsistent with Schwab's opinion, or, perhaps more importantly, how they demonstrate that Plaintiff could sit, stand, and walk for six hours in an 8-hour workday on a consistent basis, given Plaintiff's problems with her feet and back. *Cf.*, *Britt v. Comm'r of Soc. Sec.*, No. 19-CV-6451-LJV, 2020 WL 5077020, at *3 (W.D.N.Y. Aug. 27, 2020) ("[T]he ALJ discounted Dr. Zukas's opinion in part because "Dr. Toor's examination showing normal gait despite difficulty walking on heels and toes is inconsistent with [the] inability to stand or walk for two hours." Docket Item 7-2 at 58. But it is not at all clear how "showing a normal gait" in a short examination would say anything about Britt's ability to stand or walk for two hours."); *see also*, *Ahmed A. J. v. Saul*, No. 3:18-CV-00197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019) ("[I]t appears the ALJ reached the RFC

conclusion . . . because Dr. Jindal found in June 2014 that Plaintiff had a "normal gait, decreased sensation, but full strength. Conservative pain management was advised." However, the ALJ does very little to equate these circumstances with Plaintiff's ability to stand or walk for up to two hours during an eight-hour work day. . . . [H] aving a normal gait with full strength during a medical examination, does not necessarily establish the ability to stand or walk for two hours during an eight hour day. Without an explanation of how Plaintiff's . . . having a normal gait during a physician's examination equates to the ability to stand and walk up to two hours a day, the Court is unable to conduct a meaningful review of whether the RFC is supported by substantial evidence.") (citations omitted); *Peterson v. Kijakazi*, No. 3:22-CV-00026 (VLB), 2023 WL 334379, at *10 (D. Conn. Jan. 20, 2023) ("The ALJ concluded that Dr. Ringel and Dr. Fette's findings were "not consistent with the findings for only trace edema and normal gait," but he did so without any explanation of how having a normal gait during a physician's examination equates to the ability to stand and walk up to four hours a day. Meanwhile, the medical record is replete with findings for fatigue, dyspnea, shortness of breath or shortness of breath on exertion, and dizziness, any of which might reasonably be expected to limit a person's capacity to stand or walk.") (citation and internal quotation marks omitted).

The conclusory nature of Brauer's opinion, upon which the ALJ's RFC finding rests, is compounded by the fact that the opinion is stale to the extent that it was rendered without the benefit of the 2023 MRI of Plaintiff's lumbar spine, which the ALJ admits shows "moderate to marked findings." Tr. 20.

In sum, since the Court cannot say that the ALJ's procedural error was harmless, remand to the Commissioner for further administrative proceedings is required.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is granted, Defendant's cross-motion for the same relief (ECF No. 21) is denied, and this matter is remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment for Plaintiff and close the action.

So Ordered.

Dated: Rochester, New York
September 17, 2026

ENTER:

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge